**ENERGY EAST CORPORATION,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 07–812T.**

United States Court of Federal Claims.

March 11, 2010.

Joseph M. Persinger, Milbank, Tweed, et al., New York, NY, for Plaintiff.

Allison B. Ickovic, U.S. Department of Justice, Tax Division, Washington, D.C., for Defendant.

## OPINION AND ORDER

WILLIAMS, Judge.

In this action, Plaintiff seeks to recoup interest in the amount of $2,715,006.92, which it claims in connection with certain overpayments and underpayments of taxes. Plaintiff claims that it is entitled to an interest rate of zero under a statutory provision that allows "netting" of interest where there are equivalent underpayments and overpayments by the same taxpayer. This matter comes before the Court on the parties' cross-motions for summary judgment.

Plaintiff, Energy East Corporation ("Energy East") and its subsidiaries, Central Maine Power Company ("CMP"), and the Rochester Gas & Electric Corporation ("RG & E"), were separate and unrelated taxpayers during the 1995, 1996, 1997, and 1999 tax years. Energy East acquired CMP in 2000 and RG & E in 2002. Subsequent to these acquisitions, it was determined that CMP and RG & E had overpaid their income tax for 1995, 1996, and 1997,[1] and that Energy East had underpaid its income tax for 1999. The Internal Revenue Code ("IRC") generally imposes a higher rate of interest on corporate taxpayer liabilities (deficiencies) than it does on Government obligations to refund or credit overpayments. 26 U.S.C. § 6621(a).[2]

---

1. CMP overpaid its income tax for the 1995, 1996, and 1997 tax years. RG & E overpaid its income tax for the 1996 and 1997 tax years.

2. The various rates of interest payable or allowed to different kinds of taxpayers are established by § 6621, through reference to the Federal short-term rate plus a number of fixed percentage points. Corporations pay interest to the Government at the short-term rate plus 5 percentage points for underpayments in excess of $10,000. § 6621(a)(2), (c)(1) and (c)(3). Other taxpayers, including corporations with underpayments less than $10,000, pay interest at the short-term rate plus 3 percentage points. The Government, in turn, pays interest to corporations with overpay-

However, in 1998, Congress enacted § 6621(d), which permits what is known as interest rate netting—applying an interest rate of zero—to equivalent underpayments and overpayments by the same taxpayer. Section 6621(d) provides:

> To the extent that, for any period, interest is payable under subchapter A [interest on underpayments] and allowable under subchapter B [interest on overpayments] on equivalent underpayments and overpayments *by the same taxpayer* of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

(emphasis added).[3]

Invoking § 6621(d), Plaintiff seeks a net rate of zero interest on its 1999 deficiency to the extent that its underpayment was outstanding and overlapped with the 1995–1997 overpayments made by CMP and RG & E. As a predicate for this recovery, Plaintiff claims that Energy East and its subsidiaries were the "same taxpayer" within the meaning of § 6621(d) because they later became members of a consolidated group, which enabled them to file a consolidated return for income tax purposes and made them jointly and severally liable for each other's tax liabilities.

Because these subsidiaries were separate and different taxpayers wholly unrelated to Energy East both at the time the underpayment was due and the overpayments were made, the Court concludes they were not the "same taxpayer" as Energy East within the meaning of § 6621(d). As such, interest netting is not available, and the Court enters summary judgment for Defendant.

## Background[4]

Plaintiff Energy East is the parent of a consolidated group including subsidiary members CMP and RG & E. Energy East filed suit against the United States on behalf of itself and as successor-in-interest to its subsidiary members for the refund of deficiency interest paid and the payment of additional allowable interest under IRC §§ 6601, 6611, and 6621 in connection with underpayments and overpayments for certain tax years. Joint Stip. ¶¶ 1, 19.

Energy East acquired CMP Group Inc., CMP's parent, on September 1, 2000, and on July 1, 2002, acquired RG & E's parent, RGS Energy Group, Inc. *Id.* ¶¶ 4–6, 9–11. CMP and RG & E each survived the Energy East acquisitions, and both continue to exist as subsidiaries of Energy East. *Id.* ¶¶ 7, 12. Energy East assumed all liabilities of CMP and RG & E as a result of their respective acquisitions. *Id.* ¶¶ 6, 11. Upon their respective acquisitions, CMP and RG & E each became members of the Energy East affiliated group of corporations that file consolidated income tax returns. *Id.* CMP and RG & E, however, each continue to file other taxes such as payroll taxes, excise taxes, and highway use taxes on separate company bases. *Id.* ¶¶ 15–17. Also, the respective employer identification numbers for Energy East, CMP, and RG & E did not change as a result of the acquisitions. *Id.* ¶¶ 8, 13, 14.

In the mid to late 1990s, CMP and RG & E made income tax overpayments, and Energy East made an income tax underpayment, as summarized below.

### CMP Overpayments

| Tax Year (ending 12/31) | Effective Date(s) | Overpayment Amount | Interest Due to CMP | Status |
|---|---|---|---|---|
| 1995 | 12/24/2001 11/21/2001 | $6,203,755.00 | $2,392,328.77 | Overpayment and interest refunded 11/21/2001 |

ments in excess of $10,000, at the short-term rate plus 0.5 percentage points. § 6621(a)(1).

**3.** Section 6621(d) was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. 105–206 § 3301(a), 112

Stat. 685 (codified as amended in scattered sections of 26 U.S.C.).

**4.** This background is derived from the parties' Joint Stipulation of Facts ("Joint Stip.").

| Tax Year (ending 12/31) | Effective Date | Overpayment Amount | Interest Due | Status |
|---|---|---|---|---|
| 1996 | 12/24/2001 11/20/2001 | $ 259,429.00 | $ 81,028.37 | Overpayment and interest refunded 11/20/2001 |
| 1997 | 12/24/2001 11/20/2001 | $ 364,698.00 | $ 83,790.15 | Overpayment and interest refunded 11/20/2001 |

*Id.* ¶¶ 33–35.

CMP made the above income tax overpayments in tax years prior to its acquisition by Energy East on September 1, 2000. Abatements corresponding to the overpayments were allowed effective December 24, 2001, and interest on the overpayments was allowed effective November 20 and 21, 2001. *Id.* ¶¶ 22, 33, 34. The overpayments and interest were refunded to CMP on November 20 and 21, 2001. *Id.* ¶ 35. Therefore, both the abatements and corresponding interest were allowed and refunded after CMP joined the Energy East affiliated group of corporations filing consolidated tax returns. *Id.* ¶ 40.

As with CMP, RG & E made its income tax overpayments prior to being acquired by Energy East on July 1, 2002, but the abatements and interest thereon were allowed and refunded to RG & E after it became a member of the Energy East affiliated group of corporations filing consolidated tax returns. *Id.* ¶¶ 23, 36–38, 41.

### RG & E Overpayments

| Tax Year (ending 12/31) | Effective Date | Overpayment Amount | Interest Due to RG & E | Status |
|---|---|---|---|---|
| 1996 | 7/22/2002 | $ 284,699.00 | $ 97,817.72 | Overpayment and interest refunded 7/22/2002 |
| 1997 | 7/22/2002 | $1,988,093.00 | $514,986.01 | Overpayment and interest refunded 7/22/2002 |

*Id.* ¶¶ 36–38.

Meanwhile, Energy East underpaid its own income taxes in tax year 1999. The government assessed the underpaid amount of tax and determined the amount of interest due on September 23, 2002, and September 19, 2005—after RG & E and CMP joined the consolidated group and Energy East paid the assessment and interest. *Id.* ¶¶ 30–32.

### Energy East Underpayments

| Tax Year (ending 12/31) | Determination Date | Underpayment Amount | Interest Due to IRS | Status |
|---|---|---|---|---|
| 1999 | 9/23/2002 | $2,079,827.00 | $274,696.65 | Paid underpayment interest on 9/23/02 |
| 1999 | 9/19/2005 | — | $ 16,806.87 | Applied credit generated 3/15/01, posted to EEC 36th week of 2005 |

*Id.* ¶¶ 30–32.

On July 5, 2006, Energy East filed a claim with the Internal Revenue Service ("IRS") requesting a reduction and refund of deficiency interest regarding its 1999 underpayment pursuant to § 6621(d). *Id.* ¶¶ 44, 45. To date, the IRS has taken no action with regard to Energy East's claim. *Id.* ¶ 44.

Energy East filed the instant action on November 20, 2007. *Id.* ¶¶ 22, 23.[5]

### Discussion

#### Jurisdiction

This Court has subject matter jurisdiction with respect to Plaintiff's requests for interest stemming from CMP's 1995, 1996, and 1997 overpayments because the abatements were first allowed on December 24, 2001, and the complaint in this action was filed on November 20, 2007—within the six-year limitations period in 28 U.S.C. §§ 2401(a) and 2501. Joint Stip. ¶ 22. Similarly, the abatements for RG & E's 1996 and 1997 overpayment interest were first allowed on July 22, 2002, also within six years of the filing of the complaint. *Id.* ¶ 23. This Court has subject matter jurisdiction with respect to Energy East's request for refund of deficiency interest regarding the 1999 tax year because Energy East made a payment to that account within two years of filing a refund claim with the IRS. 26 U.S.C. §§ 6511(b), 7422(a); *Id.* ¶ 21.

#### Summary Judgment Standard

■■■ The Court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law." Rules of the Court of Federal Claims ("RCFC") 56(c). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering cross-motions for summary judgment, the court evaluates each motion under the same standard. *Cubic Def. Sys., Inc. v. United States*, 45 Fed.Cl. 450, 457 (1999) (citing *Kanehl v. United States*, 38 Fed.Cl. 89, 98 (1997)). Summary judgment is appropriate in this case because the parties have stipulated to the material facts, and the sole issue is one of statutory construction—a question of law.

### Plaintiff Is Not Entitled To Interest Rate Netting

At issue is whether Plaintiff and its subsidiaries, as members of a consolidated group, may be considered the "same taxpayer" under § 6621(d) and benefit from interest rate netting.[6] This is an issue of first impression.

■■■ The language of the statute itself is the starting place for the Court's inquiry into the statute's meaning. *Staples v. United States*, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *Duncan v. Walker*, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). To determine Congress's intent, the Court uses the traditional tools of statutory construction, beginning with the text of the statute. *Sharp v. United States*, 580 F.3d 1234, 1237 (Fed.Cir.2009); *Splane v. West*, 216 F.3d 1058, 1068 (Fed.Cir.2000) (citing *United States v. Gonzales*, 520 U.S. 1, 4, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)). Where the intent is unambiguously expressed by the plain meaning of the statutory text, the Court gives effect to that clear language without rendering any portion of it meaningless. *Sharp*, 580 F.3d at 1237. It is the courts' "duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955).

Section 6621(d) provides:

> To the extent that, for any period, interest is payable under subchapter A [interest on underpayments] and allowable under subchapter B [interest on overpayments] on equivalent underpayments and overpayments *by the same taxpayer* of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

(emphasis added). Thus, according to § 6621(d) on its face, interest rates may be

---

5. Energy East's interest netting claim includes interest payable by and to other entities, but only interest netting relating to Energy East's underpayment and CMP's and RG & E's overpayments is at issue in the motion sub judice.

6. Under § 1504(a) of the Internal Revenue Code, corporations having at least 80% of the stock value and 80% of the stock vote owned by a common parent, may form an "affiliated group of corporations." Section 1501 extends the privilege of filing a consolidated federal income tax return to consenting members of an affiliated group of corporations. For convenience, the Court refers to an affiliated group of corporations that files a consolidated income tax return as a "consolidated group."

netted only on "equivalent underpayments and overpayments *by the same taxpayer* of tax" imposed by Title 26. § 6621(d) (emphasis added).

■ Although Congress did not define the phrase "same taxpayer" in the statute, it defined "taxpayer" in § 7701 to mean "any person subject to any internal revenue tax." Congress did not, however, define the common adjective "same." When a common term is not defined by the statute, it is appropriate to consult a dictionary to determine its plain meaning. *See, e.g., Archer Daniels Midland Co. v. United States,* 561 F.3d 1308, 1312 (Fed.Cir.2009). In addressing a similar adjective, the Federal Circuit recognized "[i]n order to ascertain the 'established meaning' . . . of a term such as the word 'identical,' it is appropriate to consult dictionaries." *Pesquera Mares Australes Ltda. v. United States,* 266 F.3d 1372, 1382 (Fed.Cir.2001) (citations omitted). Webster's Ninth Collegiate Dictionary defines "same" to mean "being one without addition, change, or discontinuance: identical." *Webster's Ninth New Collegiate Dictionary* 1040 (1985). Under this dictionary definition of "same" which requires that the taxpayer be "identical" "without addition, change, or discontinuance," the Energy East corporation that underpaid its taxes in 1999 is not the "same" taxpayer as either the CMP corporation that overpaid its taxes in 1995, 1996, and 1997, or as the RG & E corporation that overpaid its taxes in 1996 and 1997.[7] These entities are neither "identical" nor "without addition or change." Rather, the subsidiaries were changed when their parent corporations were acquired by Energy East in 2000, giving them the ability to form a consolidated group.

Plaintiff argues that separate corporate entities that overpaid and underpaid income taxes in tax years prior to joining a consolidated group should be deemed to be the "same taxpayer" for purposes of § 6621(d). This interpretation does violence to the plain meaning of the term "same." Merely because Plaintiff later acquired RG & E and

CMP and filed consolidated tax returns for all three corporations, the three corporations did not lose their status as separate taxpayers or retroactively acquire a status as one and the same taxpayer for the tax years prior to their joining the group. Rather, although they later became members of the consolidated group, Plaintiff, CMP and RG & E were different taxpayers with different employer identification numbers at the time of their overpayments and underpayments.

Moreover, Plaintiff has not identified any language in the consolidated return provision which goes so far as to prescribe that members of a consolidated group should be treated as the "same taxpayer" for tax years prior to their joining the group. The general consolidated group provision of the IRC authorizes members of a consolidated group to file consolidated returns in accordance with regulations prescribed by the Secretary of Treasury. Specifically, § 1501 of the IRC provides that "[a]n affiliated group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by chapter 1 for the taxable year in lieu of separate returns." Section 1502 authorizes the Secretary [of the Treasury] to:

> prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both *during and after the period of affiliation,* may be returned, determined, computed, assessed, collected, and adjusted, in such a manner as clearly to reflect the income-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

(emphasis added).[8]

■ As recognized decades ago by the Court of Claims, § 1502, in authorizing the Secretary of Treasury to promulgate regulations, does not empower the Secretary to broaden the Code. As the Court of Claims

---

7. None of the overpayments and underpayments at issue were made while the corporations were members of the same consolidated group.

8. This provision is silent regarding the period of time *before* affiliation which underlies the netting claim here.

explained in *American Standard, Inc. v. United States*:

> [t]he Code grants to the Secretary broad legislative authority governing the manner in which a group's tax liability is determined when a consolidated return is filed. But this power must be construed in terms of Congress' purpose that both the group's and its individual member's actual tax liability be found under the regulations "in such manner as clearly to reflect the income-tax liability * * * and in order to prevent avoidance of such tax liability." I.R.C. § 1502. Income tax liability is not imposed by the Secretary's regulations, but by the Internal Revenue Code. Thus, the purpose of the delegation of power to the Secretary can be stated more broadly as the power to conform the applicable income tax law of the Code to the special, myriad problems resulting from the filing of consolidated income tax returns. Though there may be many reasonable methods to determine a group's tax liability and the Secretary's authority is absolute when it represents a choice between such methods, the statute does not authorize the Secretary to choose a method that imposes a tax on income that would not otherwise be taxed.

220 Ct.Cl. 411, 417, 602 F.2d 256 (1979). Just as § 1502 does not authorize the Secretary to expand tax liability, so too this provision does not authorize the Secretary to expand the benefits of zero rate interest netting to entities that would not otherwise be covered by § 6621(d).[9]

Plaintiff's interpretation of § 6621(d) to widen the category of taxpayers entitled to interest rate netting beyond the category Congress specified confronts another major obstacle-such construction violates the fundamental principle that waivers of sovereign immunity are to be narrowly construed. *Fed. Nat'l Mortgage Ass'n v. United States,*

379 F.3d 1303, 1310 (Fed.Cir.2004). Congress has waived sovereign immunity permitting a certain delimited category of taxpayers to recoup interest by netting. Congress has confined that waiver to the "same taxpayer," that made the equivalent overpayment and underpayment, and this Court must not enlarge that waiver. As the Supreme Court explained in *Library of Congress v. Shaw,* 478 U.S. 310, 317–18, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986):

> In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign ... and not enlarge the waiver " 'beyond what the language requires.' " *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–686, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983), quoting *Eastern Transportation Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927). The no-interest rule provides an added loss of strictness upon these usual rules.

> "[T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." *United States v. N.Y. Rayon Importing Co.,* 329 U.S., at 659, 67 S.Ct. 601.

Here, § 6621(d) contains no express authorization for interest rate netting to any taxpayer except "the same taxpayer" that made the equivalent overpayment and underpayment. Because Plaintiff and its subsidiaries were not the same taxpayer when they made the overpayments and underpayments at issue, they are not entitled to interest rate netting under § 6621(d).

---

9. Although courts have generally interpreted the consolidated return regulations—issued pursuant to § 1502—as promoting a legal fiction that the group is a single taxpayer, this legal fiction does not apply to the case at bar, as this gloss on the consolidated return regulations does not trump the clear provision of § 6621(d) which expressly requires that the "same taxpayer" have made the underpayments and overpayments. *See Int'l Tel.*

& *Tel. v. United States,* 221 Ct.Cl. 442, 469, 608 F.2d 462 (1979) (citing *Gould Coupler Co. v. Comm'r,* 5 B.T.A. 499, 513, 1926 WL 144 (1926)) ("The consolidated return regulations are and always have been a means for the practical enforcement of a legal fiction, namely, that certain groups of corporations are, for purposes of United States income tax, one taxpayer.").

36

## Conclusion

Defendant's cross-motion for summary judgment is **GRANTED,** and Plaintiff's cross-motion for summary judgment is **DENIED.** No costs.