# United States Court of Appeals for the Federal Circuit

---

**ENERGY EAST CORPORATION,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5132

---

Appeal from the United States Court of Federal Claims in case no. 07-CV-812, Judge Mary Ellen Coster Williams.

---

Decided: June 20, 2011

---

LAWRENCE T. KASS, Milbank, Tweed, Hadley & McCloy, LLP, of New York, New York, argued for the plaintiff-appellant. With him on the brief were JOSEPH M. PERSINGER and BLAKE REESE; and GILBERT M. POLT, of Washington, DC.

ELLEN PAGE DELSOLE, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were JOHN A. DICICCO, Acting Assistant Attorney General, and

JONATHAN S. COHEN, Attorney. Of counsel was FRANCESCA U. TAMAMI.

———————————

Before LOURIE, GAJARSA, and O'MALLEY, *Circuit Judges.*

GAJARSA, *Circuit Judge.*

The issue before the court is whether a parent and its subsidiaries, who incurred overpayments and underpayments prior to consolidation, qualify as the "same taxpayer" under Internal Revenue Code ("I.R.C.") § 6621(d). Energy East Corporation ("Energy East") filed a refund claim, seeking to offset the amount it underpaid in 1999 with amounts two of its subsidiaries overpaid from 1995-97, even though consolidation did not occur until 2000 and 2002. The Court of Federal Claims determined that Energy East was not the "same taxpayer" as its subsidiaries under § 6621(d) and denied its claim for a refund. Upon review of the statute and attendant case law, this court affirms the trial court's decision.

## BACKGROUND

On September 20, 2000, Energy East acquired CMP Group, Inc., and its subsidiary Central Main Power Company ("CMP"). *Energy East Corp. v. United States*, 92 Fed. Cl. 29, 30, 31 (2010) ("*CFC Op.*"). Energy East then acquired RGS Energy Group, Inc., including its subsidiary Rochester Gas & Electric Company ("RG & E"), on July 1, 2002. *Id.* After the acquisition, Energy East became the parent of CMP and RG & E, who in turn became brother and sister subsidiaries of the parent. Energy East assumed all of CMP's and RG & E's liabilities. *Id.* Subsequent to their respective acquisitions, CMP and RG & E became part of Energy East's affiliated group of corporations for filing consolidated income tax returns pursuant to I.R.C. § 1501. *Id.* Although CMP and RG & E are

members of an affiliated group for income tax purposes, they maintain their own employer identification numbers and file other taxes individually. *Id.*

Prior to their acquisition, both CMP and RG & E overpaid their federal income taxes. CMP overpaid its income tax in the tax years 1995-97 in the amount of $6,827,882. *Id.* at 30 n.1, 32-33. RG & E did the same in the tax years 1996 and 1997 in the amount of $2,272,792. *Id.* If a taxpayer overpays its taxes, the IRS owes the taxpayer interest on that amount, which begins accruing on the day the overpayment was made. I.R.C. § 6611(a). Post-acquisition, CMP and RG & E received refunds of their overpayments and the accrued interest. *CFC Op.* at 31-32. CMP received refunds for all three tax years on November 20 and 21, 2001; RG & E received refunds for both tax years on July 22, 2002. *Id.*

Also prior to the acquisition, Energy East underpaid its taxes in the 1999 tax year in the amount of $2,079,827. *Id.* at 33. Like the subsidiaries' overpayments, interest began accruing on Energy East's underpayment on the day the taxes were due. I.R.C. § 6601(a). Energy East paid the amount it underpaid and its first assessment of deficiency interest on September 23, 2002. *CFC Op.* at 32. It satisfied a second assessment of deficiency interest with applied credit that posted in the 36th week of 2005. *Id.*

In July 2006, Energy East filed a claim with the IRS, requesting a refund of the interest it paid on its 1999 underpayment. *Id.* at 32. The IRS took no action on this claim, and therefore Energy East filed suit in the Court of Federal Claims on November 20, 2007. *Id.* at 32-33. Energy East argued that it is entitled to a net interest rate of zero on its 1999 deficiency because § 6621(d)

allows it to offset its underpayment with CMP's and RG & E's overpayments. *Id.* at 31.

Section 6621(d) was added to the Internal Revenue Code in 1998 and allowed a taxpayer to zero out the interest rate on equivalent overpayments and underpayments. Prior to 1998, if a corporate taxpayer had overpayments and underpayments outstanding at the same time, the IRS would offset those amounts and apply the appropriate interest rate to the remaining amount, depending on whether it was an overpayment or an underpayment. H.R. Rep. 105-599, 218 (1998) (Conf. Rep.). The IRS could not, however, offset an underpayment with an overpayment that had been refunded, or conversely, offset an overpayment with an underpayment that had been satisfied. *Id.* Thus, taxpayers having equivalent overpayments and underpayments would still be assessed interest because the overpayment interest rate is less than the underpayment interest rate for corporate taxpayers. *See id.*; *compare* I.R.C. § 6621(a)(1) ("The overpayment rate . . . shall be the sum of (A) the Federal short-term rate [and] 3 percentage points (*2 percentage points in the case of a corporation*)." (emphasis added)) *with id.* § 6621(a)(2) ("The underpayment rate . . . shall be the sum of (A) the Federal short-term rate [and] 3 percentage points.")). The difference in interest rates for overpayments and underpayments increases with the size of overpayment or underpayment. *Compare id.* § 6621(a)(1) (stating that the interest rate for corporate overpayments exceeding $10,000 decreases from 2 percentage points to 0.5 percentage points) *with id.* § 6621(c) (stating that the underpayment rate increases from 3 percentage points to 5 percentage points for large corporate underpayments).

To eliminate this discrepancy for corporate taxpayers, Congress amended § 6621, which provides the rate of

interest for overpayments and underpayments, by adding subsection (d), which states:

> To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments *by the same taxpayer* of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3302, 112 Stat. 685, 741 (codified at I.R.C. § 6621(d)) (emphasis added). In other words, when a corporate taxpayer makes equivalent underpayments and overpayments for any period, the interest rate is zero on those overpayments and underpayments. The "for any period" language allows taxpayers to use interest netting under this section for overpayments that have been refunded and underpayments that have been paid.

In the Court of Federal Claims, Energy East and the Government cross-moved for summary judgment. The sole issue was whether Energy East and its subsidiaries are the same taxpayer under I.R.C. § 6621(d), and would therefore be entitled to net the interest on their respective underpayments and overpayments. *CFC Op.* at 33. The trial court granted the Government's motion, deciding that Energy East was not the "same taxpayer" as its subsidiaries under § 6621(d). *Id.* at 36. Because the Internal Revenue Code does not define "same taxpayer," the trial court relied on a dictionary to determine that "same" meant "identical" or "without addition, change, or discontinuance." *Id.* at 34 (quoting *Webster's Ninth New Collegiate Dictionary* 1040 (1985)). Using this definition, the trial court found that "the Energy East corporation

that underpaid its taxes in 1999 is not the 'same' taxpayer as either the CMP corporation that overpaid its taxes in 1995, 1996, and 1997, or as the RG & E corporation that overpaid its taxes in 1996 and 1997." *Id.* at 34 (footnote omitted). Thus, Energy East could not net interest under § 6621(d) because it was not the same taxpayer as its subsidiaries when the overpayments and underpayments occurred, as opposed to when the claim was made. *Id.* at 35.

Energy East timely appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

This court reviews a grant of summary judgment from the Court of Federal Claims de novo. *Salman Ranch Ltd. v. United States*, 573 F.3d 1362, 1370 (Fed. Cir. 2009). This court also reviews statutory interpretation de novo. *Grapevine Imports Ltd. v. United States*, 636 F.3d 1368, 1375 (Fed. Cir. 2011) (citation omitted).

The parties do not dispute that Energy East, CMP, and RG & E were not the "same taxpayer," under any definition, when their respective underpayments and overpayments were made. Rather, they dispute the point in time at which the party requesting the refund must be the "same taxpayer" to avail itself of interest netting under § 6621(d). The trial court held that § 6621(d) requires taxpayers to be the same when the overpayments and underpayments were made. This court agrees.

Whether Energy East may net interest under § 6621(d) depends on the proper construction of the statute. When interpreting a statute, "[t]he starting point . . . is the language itself." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 (1977) (quotation marks omitted). Section 6621(d) states, "[t]o the extent that . . . interest is payable

. . . on equivalent underpayments and overpayments *by the same taxpayer*," interest may be netted. I.R.C. § 6621(d) (emphasis added). Under the last antecedent rule, a limiting clause or phrase "should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (citation omitted). Here, "by the same taxpayer" immediately follows and therefore refers to "equivalent overpayments and underpayments." Thus, the statute provides an *identified* point in time at which the taxpayer must be the same, i.e., when the overpayments and underpayments are made.

Energy East, however, chooses to ignore the plain language of the statute, claiming that it provides no "point in history" that taxpayers must be the "same" prior to filing a netting claim. Appellant's Br. 18-19. Instead, Energy East claims that a "reasonable" interpretation of the statute would allow interest netting if the parent and subsidiary file consolidated returns at the time the netting claim is made. *Id.*

The interpretation suggested by Energy East rests on a limited reading of the statute and unnecessary reliance on the legislative history. Section 6621(d) clearly requires that the underpayments and overpayments be made "by the same taxpayer." It does not include the words "file" or "claim," making it difficult to understand how the filing of a netting claim could possibly be the relevant time period to determine "same taxpayer." This court cannot simply add phrases or words that do not appear in the statute; doing so would be phantom legislative action by this court. Had Congress wanted to adopt Energy East's interpretation, it could have drafted language to effectuate that result. *United States v. Locke*, 471 U.S. 84, 95 (1985) ("Congress[] typically vote[s] on the language of a bill, [and] generally [the court] assume[s] that the legisla-

tive purpose is expressed by the ordinary meaning of the words used." (internal quotation marks and citation omitted)). Congress did not include the language suggested by Energy East, and therefore, this court must rely on the plain language of the statute as enacted by Congress. *Jones v. Bock*, 549 U.S. 199, 217 (2007) ("Given that the [statute] does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993))).

Furthermore, nothing in the legislative history supports Energy East's interpretation. The legislative history states that "[t]he Committee believes that taxpayers should be charged interest only on the amount they actually owe, taking into account overpayments and underpayments from all open years." S. Rep. 105-174, 61 (1998). This statement simply reflects Congress' desire to eliminate the previous unfairness that allowed collection of interest even where the overpayment and underpayment amounts were equal. It does not, as Energy East asserts, alter the plain language of the statute and allow interest netting for any corporation that files a consolidated return. *See St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 787-88 (1981) ("[I]ndefinite congressional expressions cannot negate plain statutory language . . . ."). Indeed, "[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent is a step to be taken cautiously even under the best of circumstances." *Locke*, 471 U.S. at 95-96 (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 75 (1982) (internal quotation marks and citation omitted)). The plain language of the statute here controls and there is no need to seek a contrary legislative intent.

In the alternative, Energy East argues that § 6621(d) allows interest netting for the period when the corporations file consolidated returns and interest is accruing on their respective overpayments and underpayments. To support this interpretation, Energy East argues that the statute should be interpreted to read: "[t]o the extent that, for any period, interest is payable . . . by the same taxpayer," interest netting is allowed on equivalent overpayments and underpayments. Again, this interpretation ignores the plain language of the statute. As explained above, "by the same taxpayer" modifies "underpayments and overpayments"—the phrase it follows—not "for any period, interest is payable"—from which it is separated by three other phrases.

Energy East claims that the trial court erroneously rejected this interpretation because it "confuse[d]" overpayments and underpayments, which are allegedly period specific, with remittances, payments, offsets, and/or credits, which occur on a particular date. According to Energy East, because the "period" of its underpayment overlapped with the "period" of its subsidiaries' overpayment after consolidation, § 6621(d) allows interest netting.

In reality, it is Energy East that is advocating an erroneous interpretation. Overpayments and underpayments are attributable to a particular date, whereas interest accrues over a period of time. Section 6601(a) explains that

> [i]f any amount of tax imposed by this title . . . is not *paid on or before the last date* prescribed for payment, *interest on such amount* at the underpayment rate established under section 6621 *shall be paid for the period from such last date to the date paid.*

I.R.C. § 6601(a) (emphases added). Similarly, interest on overpayments is "allowed and paid" "from the date of the overpayment" if a credit or refund is claimed. *Id.* § 6611(b). Thus, underpayments and overpayments are attributable to a "date" and interest generally accrues from that date until the amount due is paid in full by the taxpayer or the IRS. Energy East's assertions to the contrary reflect a misunderstanding of the Internal Revenue Code.

Under the proper interpretation of the statute, Energy East cannot net the interest from its underpayment with the interest from its subsidiaries' overpayments because it was not the same taxpayer as its subsidiaries at the time the payments were made. CMP's and RG & E's overpayments were made in 1995-97 and Energy East's underpayment was made in 1999—all of which occurred prior to Energy East's acquisition of CMP and RG & E. These underpayments and overpayments were not made by the "same taxpayer," and therefore cannot be attributed to Energy East. Thus, Energy East is not entitled to interest netting pursuant to § 6621(d), and the trial court was correct in granting the Government's motion for summary judgment.

CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

**AFFIRMED**

COSTS

Costs are awarded to the United States.