**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2319**

---

BANK OF AMERICA CORPORATION, f/k/a NationsBank, f/k/a BankAmerica Corporation, f/k/a FleetBoston Financial Corporation, f/k/a BankBoston Corporation, f/k/a Summit Bancorp, f/k/a MBNA Corporation, f/k/a Merrill Lynch & Company, Incorporated,

Plaintiff – Appellant,

v.

UNITED STATES OF AMERICA,

Defendant – Appellee.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; BUSINESS ROUNDTABLE; AMERICAN BANKERS ASSOCIATION; SECURITIES INDUSTRY AND FINANCIAL MARKETS ASSOCIATION,

Amici Supporting Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:17-cv-00546-RJC-WCM)

---

Argued:  May 6, 2025                                  Decided:  July 29, 2025

---

Before AGEE, WYNN, and RUSHING, Circuit Judges.

---

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Agee and Judge Rushing joined.

---

**ARGUED:** Nicole A. Saharsky, MAYER BROWN, LLP, Washington, D.C., for Appellant. Ellen Page DelSole, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Brian W. Kittle, Geoffrey M. Collins, New York, New York, Marjorie M. Margolies, Chicago, Illinois, Minh Nguyen-Dang, Wajdi C. Mallat, MAYER BROWN LLP, Washington, D.C., for Appellant. David A. Hubbert, Deputy Assistant Attorney General, Norah E. Bringer, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. Tyler S. Badgley, Kevin R. Palmer, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C.; Lauren Willard Zehmer, Kandyce Jayasinghe, Daniel G. Randolph, COVINGTON & BURLING LLP, Washington, D.C.; Liz Dougherty, BUSINESS ROUNDTABLE, Washington, D.C.; Kevin Carroll, SECURITIES INDUSTRY AND FINANCIAL MARKETS ASSOCIATION, Washington, D.C.; Thomas Pinder, Andrew Doersam, AMERICAN BANKERS ASSOCIATION, Washington, D.C., for Amici Curiae.

2

WYNN, Circuit Judge:

Under the Internal Revenue Code, the government charges corporations interest on tax underpayments at a higher rate than it pays on tax overpayments. 26 U.S.C. § 6621(a). But where a taxpayer has made both "equivalent underpayments and overpayments" during the same time period, *id.* § 6621(d), the Code permits "interest netting," eliminating any interest liability. This provision applies only when both payments are made "by the same taxpayer." *Id.*

Here, Bank of America merged with Merrill Lynch in 2013. It now seeks to recover interest on its pre-merger tax underpayments by netting them against pre-merger overpayments made by Merrill Lynch. According to the Bank, the post-merger integration renders it the "same taxpayer" as Merrill Lynch for purposes of § 6621(d).

But that interpretation overlooks the statutory requirement that the underpayments and overpayments must be *made* by the same taxpayer. Because Bank of America and Merrill Lynch were distinct corporate entities when the relevant payments were made, the interest netting provision does not apply. *Accord Wells Fargo & Co. v. United States*, 827 F.3d 1026, 1035 (Fed. Cir. 2016) (concluding that a corporation cannot net interest under § 6621 for payments made by different corporations before a merger). We therefore affirm the district court's grant of partial summary judgment in favor of the government.

## I.

### A.

A corporate taxpayer who underpaid the government in a prior tax year owes interest on that underpayment until it has settled up with the government. 26 U.S.C. § 6601(a).

3

Similarly, the government owes interest *to* a taxpayer who overpaid in a prior year—but at a lower rate, so as to encourage the timely payment of taxes and discourage intentional overpayment. *Id.* § 6611(a); *see* H.R. Rep. No. 99-426, at 849 (1985).

If a taxpayer made both under- and overpayments in the past, the IRS may net out the outstanding *balances* under 26 U.S.C. § 6402(a), which provides: "In the case of any overpayment, the Secretary [of the Treasury], within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person." This avoids the administrative inconvenience of a taxpayer paying the government and the government paying them back.

Because the underpayment interest rate exceeds the overpayment interest rate, a taxpayer who had equivalent under- and overpayments during some overlapping period would still owe interest to the government. But in that situation, § 6621(d), which was added to the Internal Revenue Code in 1998, nullifies the interest rate: "To the extent that, for any period, interest is payable under subchapter A [underpayments] and allowable under subchapter B [overpayments] on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period." *Id.* § 6621(d).

In practice, this is done by "either decreasing the interest rate for an underpayment or increasing the interest rate for an overpayment," such that the two rates are equal. *Ford Motor Co. v. United States*, 908 F.3d 805, 806 (Fed. Cir. 2018). So, while courts call this

4

process "interest netting" as a term of art, the different interest rates are actually equalized (rather than summed). *Id.* At issue here is whether certain tax payments by Bank of America and Merrill Lynch are "underpayments [or] overpayments by the same taxpayer" within the meaning of § 6621(d).

B.

The facts are not in dispute. The parties have agreed on two test cases to serve as the basis for their cross-motions for partial summary judgment, although none of their arguments rest on any distinction between the two test cases.

In the first test case, Bank of America underpaid for the 2005 tax year and Merrill Lynch overpaid for the 2005 tax year. There was an overlapping period in which interest accrued on the under- and overpayments from March 15, 2010, through June 30, 2014. J.A. 114.[1]

In the second test case, Bank of America underpaid for the 2005 tax year (the same underpayment as in the first test case), and Merrill Lynch overpaid for the 1999 tax year. There were overlapping periods of accruing interest from March 15, 2006, through March 15, 2007, and April 15, 2009, through August 26, 2009. *Id.*

On October 1, 2013, Bank of America merged with Merrill Lynch, with Bank of America remaining as the surviving corporation.

---

[1] Citations to the "J.A." refer to the joint appendix filed by the parties in this matter.

5

C.

In 2017, Bank of America filed this lawsuit in the Western District of North Carolina to recover a total of $163,469,627 in underpayment interest it had already paid the government and overpayment interest it argued the government owed. The district court initially held that it had jurisdiction over all of the Bank's claims. *Bank of Am. Corp. v. United States*, No. 3:17-cv-546, 2019 WL 2745856, at *4 (W.D.N.C. July 1, 2019). But, on the government's interlocutory appeal to the Federal Circuit, that court held that the Court of Federal Claims held exclusive jurisdiction over the Bank's claims for overpayment interest exceeding $10,000. *Bank of Am. Corp. v. United States*, 964 F.3d 1099, 1101 (Fed. Cir. 2020). The district court therefore severed those claims and transferred them to the Court of Federal Claims. *Bank of Am. Corp. v. United States*, No. 3:17-cv-546, 2021 WL 12321306, at *1 (W.D.N.C. Sept. 20, 2021). The claims remaining in the district court were for overpayment interest under $10,000 and for refunds of underpayment interest. *See id.*

Both parties moved for partial summary judgment regarding the application of § 6621(d)'s "same taxpayer" requirement to the two test cases. The parties agreed that the district court's resolution of those test cases would, in practice, determine the remainder of the Bank's claims.

Relying in part on the Federal Circuit's 2016 decision in *Wells Fargo & Co. v. United States*, the district court granted the government's motion for partial summary judgment. *Bank of Am. Corp. v. United States*, 656 F. Supp. 3d 574, 578 (W.D.N.C. 2023) (citing *Wells Fargo*, 827 F.3d at 1034–35). It concluded that the "by the same taxpayer"

6

requirement applies when the overpayments and underpayments were made. *Id.* at 579. Because the Bank and Merrill Lynch were different companies before the merger, they were not the same taxpayer when the payments were made. *Id.* at 581. And, even if the court looked to the law of mergers in Delaware (where the Bank and Merrill Lynch are incorporated), Delaware law doesn't "retroactively change a taxpayer's status as to earlier payments." *Id.* at 582 (quoting *Wells Fargo*, 827 F.3d at 1035).

The Bank moved to certify an interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted that motion, and we granted the Bank's petition for review.

II.

On appeal, we review a district court's order granting summary judgment de novo. *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023).

A.

We start with the text of the statute. Section 6621(d)'s interest-netting provision applies when, "for any period, interest is payable . . . on equivalent underpayments and overpayments by the same taxpayer."

We agree with the parties, and with the Federal Circuit, that "by the same taxpayer" modifies "equivalent underpayments and overpayments," not the "interest [that] is payable." *See Energy E. Corp. v. United States*, 645 F.3d 1358, 1362–63 (Fed. Cir. 2011). The last-antecedent rule of construction, which the Supreme Court has applied "from [its] earliest decisions," "provides that a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 577 U.S. 347, 351 (2016) (quotation omitted). This canon captures the simple

7

intuition that Congress more likely intends a phrase to modify an adjacent noun or phrase than one far away.

Applied here, this rule of construction indicates it's the "equivalent underpayments and overpayments" that must be "by the same taxpayer" for the provision to apply.[2] "By the same taxpayer" modifies the phrase "equivalent underpayments and overpayments," rather than the word "overpayments" alone, because the adjective "same" implies that the overpayments must have a point of reference—here, the underpayments.

The parties dispute, however, the meaning of the phrase "by the same taxpayer." The preposition "by" has many definitions, but by far the most natural here is "through the means or instrumentality of." *Webster's Third New Int'l Dictionary* 307 (2002). "After all, no observation about taxpayers is more natural than that they *make* tax payments." *Bank of Am.*, 656 F. Supp. at 580. In other words, the statute requires that the same taxpayer *made* the "equivalent underpayments and overpayments."

The Federal Circuit applied this commonsense logic in *Energy East Corp. v. United States*. In that case, the court concluded that the statute "provides an *identified* point in time

---

[2] "*Rule* of construction" may be something of a misnomer. "[A]s with any canon of statutory interpretation, the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" *Lockhart*, 577 U.S. at 352 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). But such indicia are lacking here. "For instance, take 'the laws, the treaties, and the constitution of the United States.' A reader intuitively applies 'of the United States' to 'the laws,' 'the treaties' and 'the constitution' because (among other things) laws, treaties, and constitution are often cited together, because readers are used to seeing 'of the United States' modify each of them, and because the listed items are simple and parallel without unexpected internal modifiers or structure." *Id.* Here, "interest is payable" is not parallel with "underpayments and overpayments," and there is nothing else from the statute's context to indicate that the canon shouldn't apply.

at which the taxpayer must be the same, i.e., when the overpayments and underpayments are made." *Energy E.*, 645 F.3d at 1361. It therefore prohibited a corporation that acquired (but did not merge with) another corporation from netting interest on earlier under- and overpayments. *Id.* Then, in *Wells Fargo*, the Federal Circuit held that a merged corporation could not net pre-merger interest in a situation materially identical to the case before us because even though "the two entities later merged[,] . . . *Energy East* makes clear that it is the identity of the corporation *at the time of the payments* that matters."[3] *Wells Fargo*, 827 F.3d at 1035 (citing *Energy E.*, 645 F.3d at 1363).

The Bank instead argues that "by" in this context means "with respect to" or "concerning." Opening Br. at 31 (quoting *The Oxford American Dictionary and Language Guide* 127 (1999)). Because "the overpayments and underpayments are the responsibility of Bank of America," the Bank concludes that "all of the overpayments and underpayments at issue were 'by the same taxpayer.'" *Id.* at 32.

We are not persuaded. The Bank's reading of the statute avoids the most natural understanding of the word "by." The Bank relies on the *ninth* definition of that word in a dictionary that lists definitions "in a numbered sequence in order of relative familiarity and importance, with the most current and important senses given first." *The Oxford American*

---

[3] *Wells Fargo* also held that a merged corporation could net interest from a *post-merger* payment and a pre-merger payment. 827 F.3d at 1042. To explain via example, imagine that A and B merge into C. Before the merger, A made an underpayment, and after the merger, C made an overpayment. *Wells Fargo* says that C can net the interest from those two payments. *Id.* at 1042. That is different from what the Bank proposes (and *Wells Fargo* rejects): C attempting to net the pre-merger payment interest from A and B. *Id.* at 1034; *see infra*, Section II.D.

9

*Dictionary and Language Guide* xi, 127 (1999). In contrast, "through the agency, means, instrumentality, or causation of" is that dictionary's second definition of "by." *Id.* at 127.

And, put into the context of § 6621(d), the latter definition works much more smoothly: "equivalent underpayments and overpayments [through the agency, means, instrumentality, or causation of] the same taxpayer" reads easily, while "equivalent underpayments and overpayments [with respect to] the same taxpayer" or "[concerning] the same taxpayer" doesn't make much sense. That's because, in a taxation case, the central relationship between "underpayments and overpayments" and "taxpayer" is one of causation by the taxpayer: the taxpayer underpays or overpays.[4]

In practice, the Bank's view would rewrite the statutory text. The Bank essentially reads the statute to require the "same taxpayer" to be *liable now* for the interest payable on an underpayment and *entitled now* to interest allowable on an overpayment. To be sure, interest netting presupposes "interest [that] is payable under subchapter A [on underpayments] and allowable under subchapter B [on overpayments]." 26 U.S.C. § 6621(d). But it is the underpayments and overpayments themselves, and *not* the "interest [that] is payable [on underpayments] and allowable [on overpayments]," that must be "by

---

[4] Further, the examples given in the Bank's preferred definition of "by" are inapposite to § 6621(d): "did our duty by them," "all right by me," "Smith by name." *The Oxford American Dictionary and Language Guide* 127 (1999). In the first two examples, "by" essentially means "to," which is almost the opposite of "by" in § 6621(d)—payments emanate *from* taxpayers, not to them. And the third example is an idiomatic phrase that means a person's "name is Smith." Similarly, one might say "I am a carpenter by trade," meaning, "my trade is carpentry." One would not say that "underpayments and overpayments by the same taxpayer" means "the same taxpayer is underpayments and overpayments."

the same taxpayer." *Id.* The statute therefore "provides an *identified* point in time at which the taxpayer must be the same, i.e., when the overpayments and underpayments are made." *Energy E.*, 645 F.3d at 1361.

The Bank correctly recognizes that it "seeks to net the interest on a *pre-merger* Bank of America underpayment against the interest on a *pre-merger* Merrill Lynch overpayment." Opening Br. at 11 (emphasis added). Underpayments and overpayments are made on specific dates prescribed by federal law—in this case, well before the Bank merged with Merrill Lynch in 2013. "The date of the overpayment," 26 U.S.C. § 6611(b)(2), is defined as the date when the "amount allowable . . . exceeds the tax imposed," *id.* § 6401(b)(1).

More precisely, it is "the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability." 26 C.F.R. § 301.6611-1(b). The Bank doesn't challenge the district court's finding that "the first date on which Merrill's payments exceeded its liabilities for its 2005 tax year was March 15, 2008," and "[t]he first date on which Merrill's payments exceeded its liabilities for its 1999 tax year was March 15, 2002." *Bank of Am.*, 656 F. Supp. 3d. at 578 n.2.

Likewise, underpayment interest begins to accrue on the "last date prescribed for payment of the tax." 26 U.S.C. § 6601(a), (b). The Bank doesn't challenge the district court's finding that "[t]he last date prescribed for the payment of Bank of America's 2005 taxes was March 15, 2006." *Bank of Am.*, 656 F. Supp. 3d. at 578 n.2.

The Bank notes that "[w]hether a taxpayer has an underpayment or overpayment for a particular tax year often is not known until after the taxpayer and the IRS finish making

11

adjustments for that tax year, which can be many years later." Reply Br. at 8. But those adjustments do not themselves mark the date of an under- or overpayment; they only recognize the existence of earlier under- or overpayments, which is why interest begins accruing at that earlier date.

Bank of America and Merrill Lynch were not the "same taxpayer" when they made the under- and overpayments at issue here. The Bank is therefore ineligible for interest netting under the plain text of the statute.

## B.

Nonetheless, the Bank contends that § 6621(d) should be interpreted consistently with § 6402(a), the balance-netting provision, and that § 6402(a) permits balance netting in this case. Stated differently, the Bank argues that Congress enacted § 6621(d) "to ensure that a taxpayer that owes no tax will not have to pay interest." Opening Br. at 7. Although this argument has intuitive appeal, the interest-netting and balance-netting provisions have materially different language and purposes and therefore should not be applied together in every case.[5]

Textually, the balance-netting provision has a broader scope than the interest-netting provision. The Secretary has discretion to balance net when "the person who made the overpayment" has "any liability," including liability originally incurred by another

---

[5] *Wells Fargo* did not squarely address this argument in the context of pre-merger payments. Instead, *Wells Fargo* concluded that § 6621(d) must be interpreted consistently with § 6402(a) in the context of a pre-merger and *post*-merger payment. 827 F.3d at 1041.

12

corporation.[6] 26 U.S.C. § 6402(a). In contrast, the interest-netting provision applies only when there are under- and overpayments "by the same taxpayer" and interest accrues on those payments during an overlapping period. *Id.* § 6621(d). So we disagree with the Bank's contention that interest netting must be available whenever balance netting is.

Those textual differences make practical sense. Consider, for example, that a corporation made an underpayment of $10 million in 2015. Underpayment interest accrued on that $10 million deficit until 2020, when the corporation made a $10 million overpayment. The Secretary could credit the corporation's $10 million overpayment toward its underpayment liability under § 6402, but that would not cover the *interest* that had accrued on the underpayment. Textually, that is because § 6621 only applies when there are equivalent under- and overpayments "for any period," and the corporation owed $10 million for five years before any equivalent overpayment offset that liability. And logically, it is fair for the corporation to pay the government interest because the government essentially acted as the corporation's creditor for five years. Thus, even though that corporation owes no tax, it does owe interest.

---

[6] Although it doesn't mean that the Bank may net interest, the Bank is probably correct that it could receive balance netting here. Prior to the merger, Bank of America made an underpayment and Merrill Lynch made an overpayment. At first glance, Bank of America is therefore not the "person who made the overpayment." However, *Wells Fargo* concluded, and the government does not now contest, that a merger serves to make the surviving company the same as both merged companies. 827 F.3d at 1041–42. Put differently, when A and B merge into C, C is both A and B. (That does not, however, make A the same as B prior to the merger. *See infra* Section II.D.) Here, although the merged corporation has the name Bank of America, it is actually a composite of Bank of America and Merrill Lynch. Under *Wells Fargo*'s logic, then, the Bank is the "person who made the overpayment" and is liable for its own underpayment, so it could now net those balances.

C.

The Bank also contends that § 6621's legislative history indicates that it should be "appl[ied] broadly" "to ensure that taxpayers would not have to pay interest when they did not owe tax." Opening Br. at 55–56. The statute's text is clear, so we needn't reach its legislative history. But, in any event, legislative history lends no support to the Bank's position. *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) (assessing legislative history even though "[t]he text is clear").

Before § 6621's passage, interest netting—i.e., equalizing the different interest rates for under- and overpayments—could be obtained only if the IRS had chosen to balance net under § 6402(a). *See Energy E.*, 645 F.3d at 1360; 26 U.S.C. § 6601(f) (allowing interest netting if "any portion of a tax is satisfied by credit of an overpayment" under § 6402(a)). Thus, "if a corporate taxpayer had overpayments and underpayments outstanding at the same time, the IRS [c]ould offset those amounts [under § 6402(a)] and apply the appropriate interest rate to the remaining amount." *Energy E.*, 645 F.3d at 1360.

But, under § 6402(a), the IRS would not offset an overpayment with an underpayment that had "been satisfied." H.R. Rep. No. 105-599, at 256 (1998) (Conf. Rep.). That is because § 6402(a) only applies when a corporation has tax "liability," which the IRS naturally interpreted to mean outstanding tax liability. *See N. States Power Co. v. United States*, 73 F.3d 764, 768 (8th Cir. 1996) (agreeing, prior to the passage of § 6621, that IRS couldn't balance net—and therefore interest net—after a taxpayer had "paid off its tax deficiencies"). So, once a taxpayer paid off their underpayment, they could no longer offset that underpayment with an outstanding overpayment to obtain interest netting.

14

Perversely, this incentivized taxpayers to "delay the payment of underpayments they [did] not contest, so that the underpayments [would] be available to offset any overpayments that are later determined." S. Rep. No. 105-174, at 62 (1998). Congress responded by passing § 6621(d), which eliminates interest on "equivalent underpayments and overpayments" "for any period," *id.*, "without regard to whether the underpayments or overpayments are currently outstanding," H.R. Rep. No. 105–599, at 257 (1998) (Conf. Rep.).

This legislative history only demonstrates that Congress intended to allow taxpayers who had already satisfied their underpayments to obtain interest netting.[7] It does not speak to whether companies that later merge are the "same taxpayer" for purposes of the statute.

Finally, we agree with the government that accepting the Bank's position "could lead to abusive mergers that have no purpose other than to retroactively create a 'same taxpayer' to make interest-netting claims." Response Br. at 16. There is no indication in the statute's text or legislative history that Congress intended this result.

The Bank rejects the proposition that we should evaluate whether taxpayers are the same at the time of the payments, but its alternative is not clear: it argues both that the question "should be determined *now*," Opening Br. at 40 (emphasis added), and when "the taxpayer is settling up its obligations for the tax years at issue," Reply Br. at 9. Neither suggestion has any basis in the text of § 6621. *See Energy E.*, 645 F.3d at 1362 (§ 6621(d)

---

[7] Bank of America also cites internal IRS memoranda from the IRS chief counsel. But, by statute, these memoranda "may not be used or cited as precedent." 26 U.S.C. § 6110(k)(3).

15

"does not include the words 'file' or 'claim,' making it difficult to understand how the filing of a netting claim could possibly be the relevant time period to determine 'same taxpayer'"). And, either way, the Bank's position would apparently allow a corporation with a sizeable preexisting underpayment to eliminate the interest it owes the government by merging with a corporation that has an outstanding overpayment—perhaps even *after* the IRS initiated collection proceedings against the underpaying corporation. We don't think that Congress intended § 6621 to invite such tactics.

The Bank contends that "[i]t defies belief to think that a corporation would go through the considerable time, effort, and expense of a merger just so it *might* be able to take advantage of interest netting." Reply Br. at 13. But it's not hard for us to believe that corporations would merge to obtain a tax benefit. That is particularly so given the high stakes of interest netting. In this case, for example, the Bank sought over $160 million from the government.

D.

The Bank's final salvo—conceding for the sake of argument that § 6621(d) requires taxpayers to be the same at the time of payment—is that Delaware "merger law . . . treat[s] the surviving company and the merged companies as the same company for federal tax purposes, including retrospectively." Opening Br. at 24. We disagree for two reasons.

First, there is no reason to look to state law here. Congress, of course, controls the federal taxing power, and "[t]he exertion of that power is not subject to state control." *Burnet v. Harmel*, 287 U.S. 103, 110 (1932). So, we have said that "[s]tate law simply may not provide controlling guidance in this sensitive area unless 'the federal taxing act by

16

express language or necessary implication makes its operation dependent upon state law.'"

*Air Power, Inc. v. United States*, 741 F.2d 53, 56 (4th Cir. 1984) (quoting *Lyeth v. Hoey*, 305 U.S. 188, 194 (1938)).

This case turns on the phrase "equivalent underpayments and overpayments by the same taxpayer." 26 U.S.C. § 6621(d). That phrase requires the taxpayers to be the same at the time the payments were made. Here, there is no doubt that Bank of America and Merrill Lynch were wholly different taxpayers when these payments were made, years before the companies merged. *See* Opening Br. at 11 ("Bank of America seeks to net the interest on a pre-merger Bank of America underpayment against the interest on a pre-merger Merrill Lynch overpayment."). So there isn't any hole in the analysis that state law must fill.

Second, even if we did look to state law to help us interpret the statute, the laws of Delaware do not retroactively make those corporations the same at the time of payment. Consider, for example, that Corporation A and Corporation B merge to make Corporation C.[8] For the sake of argument, we can agree with the Bank that Delaware merger law gives C the identity of A and B after the merger—that is why *Wells Fargo* allowed interest netting on an overpayment made by A (pre-merger) and an underpayment made by C (post-merger). *Wells Fargo*, 827 F.3d at 1030, 1042. The Bank's fundamental error is making

---

[8] *Wells Fargo* concluded that it didn't matter which corporation "surviv[ed]" or kept its name in the merger; for purposes of § 6402 and § 6621, the surviving corporation was really a composite of the two merged corporations. *Wells Fargo*, 827 F.3d at 1038–39. Neither party contests that principle for purposes of this case. Thus, we refer to the surviving corporation as C rather than A or B to clarify that it doesn't matter what name that corporation uses. For example, it would make no difference here if the merged corporation kept the name "Merrill Lynch," nor if Merrill Lynch was technically the surviving corporation for other merger-law purposes.

the unsupported leap that A must therefore be retroactively the same as B prior to the merger.

The Bank's purported authority for this proposition says no such thing. For example, the Bank cites a Delaware case holding that "old corporations have their identity absorbed into that of the new corporation." *Argenbright v. Phoenix Fin. Co. of Iowa*, 21 Del. Ch. 288, 292 (1936). In other words: after the merger, C carries forward the identities of both A and B. Other cases the Bank cites state the unobjectionable proposition that a surviving corporation remains responsible for liabilities incurred by a merged corporation, *see Del. Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*, 892 A.2d 1073, 1078 (Del. 2006), or that the surviving company "step[s] into . . . [the] shoes" of the merged company's stock holdings, *Peter Schoenfeld Asset Mgmt. LLC v. Shaw*, No. Civ.A 20087-NC, 2003 WL 21649926, at *1 (Del. Ch. July 10, 2003).

The Bank also points to a Delaware statute which says that "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation." Del. Code Ann. tit. 8, § 259(a). But these sources simply make the basic, undisputed point that, at the time of the merger, the pre-merger companies join into a new entity that absorbs their liabilities. That does not make the pre-merger companies retroactively the same prior to the merger.

The Bank makes the same unsupported leap when it argues that *Wells Fargo* "largely supports Bank of America's view." Opening Br. at 3. *Wells Fargo* addressed two scenarios relevant here.

18

In the first, *Wells Fargo* held that interest owed to A on an overpayment couldn't be netted with interest owed by B on an underpayment, even if the corporations later merged into C—exactly the scenario before us. 827 F.3d at 1029. In the second, *Wells Fargo* held that interest owed to A on a pre-merger overpayment *could* be netted with interest owed by C on a post-merger underpayment. *Id.*; *see id.* at 1041.

The Bank seems to think that the logic of the latter situation compels the conclusion that interest netting is permissible in the former. But *Wells Fargo* rejected that exact argument, holding that Wells Fargo "point[ed] to no controlling authority . . . to support its position" that "merger law operates to retroactively make [A and B] the same under the statute." *Id.* at 1035. Like the plaintiff in *Wells Fargo*, the Bank hasn't identified any such authority here.

## III.

The judgment of the district court is affirmed.

*AFFIRMED*

19