# United States Court of Appeals for the Federal Circuit

_____

**WELLS FARGO & COMPANY,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

_____

2015-5059

_____

Appeal from the United States Court of Federal Claims in No. 1:11-cv-00808-NBF, Senior Judge Nancy B. Firestone.

_____

Decided: June 29, 2016

_____

GERALD KAFKA, Latham & Watkins LLP, Washington DC, argued for plaintiff-appellee. Also represented by GREGORY G. GARRE, BENJAMIN SNYDER, NICOLLE NONKEN GIBBS.

ELLEN PAGE DELSOLE, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by JONATHAN S. COHEN, GILBERT STEVEN ROTHENBERG, CAROLINE D. CIRAOLO, DIANA L. ERBSEN.

_____

Before LOURIE, HUGHES, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

The United States appeals from the Court of Federal Claims' order granting Wells Fargo & Company's motion for partial summary judgment and denying the government's motion for partial summary judgment. The court held that Wells Fargo's interest-netting claims under § 6621(d) of the Internal Revenue Code ("I.R.C.")[1] satisfy the statute's "same taxpayer" requirement. The court certified its interpretation of I.R.C. § 6621(d) for interlocutory review, and the government petitioned for permission to appeal. We granted the government's petition under 28 U.S.C. § 1292(d)(2). For the reasons below, we affirm-in-part, reverse-in-part, and remand for proceedings consistent with this opinion.

## BACKGROUND

Wells Fargo originally filed three administrative claims with the Internal Revenue Service seeking, among other things, refunds based on interest netting under § 6621(d) between interest on tax underpayments and interest on tax overpayments. The IRS denied the interest netting claims at issue here. Wells Fargo then filed a complaint in the Court of Federal Claims, requesting tax refunds based on the application of interest netting under § 6621(d).

---

[1] References to the I.R.C. are to Title 26 of the United States Code.

## I.

Congress enacted I.R.C. § 6621(d) to permit a taxpayer to cancel out, or "net," interest on equivalent overpayments and underpayments.  Section § 6621(d) reads:

> To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the *same taxpayer* of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

I.R.C. § 6621(d) (emphasis added).

Absent an interest-netting provision like § 6621(d), a taxpayer might make equivalent underpayments and overpayments yet owe the IRS interest.  This is because corporate taxpayers pay underpayment interest to the IRS at a higher rate than the IRS pays overpayment interest to corporations.  *See* Tax Reform Act of 1986, Pub. L. No. 99-514, § 1511(a), 100 Stat. 2085, 2744.  Section 6621(d) corrects this inequity by permitting taxpayers to net interest on "equivalent underpayments and overpayments by the same taxpayer."

## II.

In the decades before and after the turn of the century, Wells Fargo underwent seven mergers, resulting in the current embodiment of the company.  The companies involved in these mergers made tax underpayments and overpayments.  Wells Fargo seeks to net these payments under § 6621(d).  In particular, Wells Fargo filed 64 separate claims for a refund in the Court of Federal Claims relating to these mergers and tax payments.  Because of the complexity of the facts at issue, Wells Fargo and the government distilled Wells Fargo's claims into three "situations" that served as test claims for the

factual and legal issues presented in the case. *Wells Fargo & Co. v. United States*, 117 Fed. Cl. 30, 34 (Fed. Cl. 2014).

Situation One: In 1993, Old Wachovia had an overpayment. In 1999, First Union had an underpayment. Old Wachovia and First Union merged in 2001 through a statutory merger under I.R.C. § 368(a)(1)(A). Situation One is represented graphically below:



J.A. 1549 (annotated).

Situation Two: In 1993, First Union had an overpayment. Between 1993 and 1999, First Union underwent four mergers under I.R.C. § 368(a)(1)(A), (2)(D); First Union was the surviving corporation in each merger. Then, in 1999, First Union made an underpayment. Situation Two is represented graphically below:[2]

---

[2]    We recognize that Situation Two also includes the 1998 merger of FCNJ and First Union carried out under I.R.C. § 368(a)(1)(A). *Wells Fargo*, 119 Fed. Cl. at 30.



J.A. 1549 (annotated).

Situation Three: In 1992, CoreStates had an overpayment. In 1998, CoreStates merged with First Union under I.R.C. § 368(a)(1)(A). In 1999, surviving-corporation First Union made an underpayment. Situation Three is represented graphically below:



J.A. 1549 (annotated).

### III.

Because § 6621(d) allows interest netting only by the "same taxpayer," the dispute below centered on the meaning of "same taxpayer." Wells Fargo contended that principles of merger law made all merged corporations the "same taxpayer" under the statute, regardless of the timing of the payments or the prior identities of the corporations making them. The government countered that the taxpayers are the "same taxpayer" only if the taxpayers making the underpayments and overpayments have the same Taxpayer Identification Number ("TIN") at the time of the payments. The government conceded that, under this definition of "same taxpayer," the acquiring corporation and surviving corporation in Situation Two were the "same taxpayer" because the corporation making the overpayment and the corporation making the underpayment had the same TIN. The government alternatively argued that the court should decide the "same taxpayer" question on the basis of whether the corporations were the same in all relevant essentials at the time of the payments.

In a partial summary judgment order, the Court of Federal Claims held that Wells Fargo could net interest in all three situations. After considering myriad sources of authority, the court largely adopted Wells Fargo's position, holding that, under principles of merger law, merged entities are the "same taxpayer" for the purposes of § 6621(d). It first looked to the text of the statute to determine whether the meaning of "same taxpayer" is defined and concluded that it is not. The court explained that neither the statute nor Treasury regulations define the term "same taxpayer." *Wells Fargo*, 117 Fed. Cl. at 36.

The court turned next to § 6621(d)'s legislative history to see if it defines "same taxpayer," but concluded it does

not.　Nevertheless, the court found that "the legislative history reveals that Congress intended for § 6621(d) to be remedial in nature" and so "the statute must be construed broadly."　*Id.* (citing *Tcherepnin v. Knight,* 389 U.S. 332, 336 (1967)).　The court explained that the legislative history offered two insights into Congress's intent in enacting the statute.　First, the legislative history revealed that Congress intended § 6621(d) "to provide fairness for taxpayers."　*Id.* (citing H.R. Rep. No. 105-364, pt. 1, at 63–64 (1997) ("[T]axpayers should be charged interest only on the amount they actually owe, taking into account overpayments and underpayments from all open years."); S. Rep. No. 105-174, at 61 (1998)).　Second, the history "ma[de] clear that Congress was aware that large corporations, like plaintiff, would be the primary beneficiaries of the provision, because only large corporations such as plaintiff would likely have multiple open years with the IRS."　*Id.*

The court also examined the sole Federal Circuit case interpreting § 6621(d)'s "same taxpayer" provision, *Energy East Corp. v. United States*, 645 F.3d 1358 (Fed. Cir. 2011).　The government had argued that *Energy East* established that whether payments were made by the "same taxpayer" must be measured at the time of the overpayments and underpayments.　But the court distinguished *Energy East* on the ground that it concerned a group of corporations affiliated for filing consolidated income tax returns, while Wells Fargo's netting claims implicated merged corporations.　*Wells Fargo*, 117 Fed. Cl. at 37–39.

Because the definition of "same taxpayer" remained unclear after reviewing the text of the statute, the legislative history, and precedent, the court next turned to principles of merger law.　The court explained that merger law operates to take two separate entities and merge them into one surviving corporation:

In a merger, the acquired and acquiring corporations have no post-merger existence beyond the surviving corporation; instead, they become one and the same by operation of law, and thereafter the surviving corporation is liable for the pre-merger tax payments of both the acquired and acquiring corporations. Because the surviving corporation steps into the shoes of the acquired entity and the surviving corporation is liable retroactively for the tax payments of its predecessors, it does not matter when the initial payments were made.

*Id.* at 38 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550 n.3 (1964); Treas. Reg. § 1.368-2(b)(1)(ii)).

The Court of Federal Claims also examined Treasury regulations and guidance from the IRS predating this case. It found that these sources authorized merged corporations to net interest. *Id.* at 41. The court explained that while the guidance was not precedential, it was helpful evidence in determining the position of the IRS. *Id.* (citing *Rowan Cos. v. United States,* 452 U.S. 247, 261 n.17 (1981) ("Although these rulings have no precedential force, . . . they are evidence . . . ."); *Magma Power Co. v. United States,* 101 Fed. Cl. 562, 571–72 (Fed. Cl. 2011)). The court found this guidance consistent with Wells Fargo's view that merged entities are the "same taxpayer" for the purposes of the statute.

The court "conclude[d] that merged corporations are the 'same taxpayer' for purposes of § 6621(d) based on the undisputed principles of corporate law, as well as IRS rules governing statutory mergers and IRS guidance." *Wells Fargo*, 117 Fed. Cl. at 42. The court reasoned that an acquired corporation is the "same" as a surviving corporation under the operation of merger law. The surviving corporation takes on all of the assets and liabilities of both the acquired corporation and the acquiring

corporation—the surviving corporation steps into the shoes of the predecessor corporations. The court concluded that "where a statutory merger has occurred, the surviving corporation is the 'same taxpayer' as the acquired corporation for purposes of § 6621(d)." *Id.* at 38.

Applying that definition to the three situations described above, the Court of Federal Claims granted Wells Fargo's motion for partial summary judgment, agreeing that it could net interest under § 6621(d) in all three situations. The government moved for the court to certify its opinion for immediate appeal. The court granted the motion and issued an amended opinion reflecting the certification. The government then petitioned our court for review under 28 U.S.C. § 1292(d)(2). We granted the petition, and the government submitted its appeal.

DISCUSSION

We review a grant of summary judgment by the Court of Federal Claims de novo. *Salman Ranch Ltd v. United States*, 573 F.3d 1362, 1370 (Fed. Cir. 2009). We also review statutory interpretation de novo. *Energy E.*, 645 F.3d at 1361. Neither party disputes the facts as recited by the Court of Federal Claims.

Adopting the Court of Federal Claims' holding as its position, Wells Fargo argues that whenever two companies merge, any payments they made—whether before or after the merger—were made by the "same taxpayer." Specifically, Wells Fargo argues that because it "has subsumed in one corporate form the corporate identities of the several corporations that have been merged into it—becoming by operation of law liable for their underpayments (and interest thereon) and entitled to refunds of their overpayments (and interest thereon)—the 'same taxpayer' made each of the overpayments and underpayments at issue in the case." Appellee Br. 56. Wells Fargo essentially argues that two merging entities are the

"same taxpayer" because the surviving corporation acquires and assumes the legal identity of the acquired corporation, so a merger effectively makes two corporations into one. In other words, because the current Wells Fargo incorporated all of the corporate entities that made the underpayments and overpayments through mergers, Wells Fargo is the "same taxpayer" as all of those entities.

In contrast to Wells Fargo's singular approach, the government argues each situation separately. It does, however, propose two alternative general-purpose tests that would apply across all three situations. For its first test, the government proposes that "same taxpayer" be decided by an entity's TIN. Alternatively, the government proposes that we adopt a dictionary definition of the word "same." In particular, the government proposes that we determine whether two taxpayers are the "same taxpayer" by looking to whether they have "an identity of 'relevant essentials.'" Appellant Br. 49 (quoting *Webster's Third New Int'l Dictionary* 2007 (1969)).

The government's TIN test would read § 6621's netting provisions to require that a corporation have the same TIN at the time of both the underpayment and the overpayment. The government uses a TIN to identify each taxpaying entity, and a corporation's TIN will remain the same even if it experiences substantial change to its corporate structure. But under the government's proposed definition, an acquired corporation's ability to net interest ends with a merger. After an acquired corporation merges, it loses its TIN. So under the government's test, pre-merger overpayments and underpayments by an acquired corporation cannot be netted with payments by a post-merger entity under § 6621(d).

Moreover, the government's TIN test had been adopted by the Court of Federal Claims in an earlier case, *Magma Power,* 101 Fed. Cl. at 569. In that case, the court

considered whether a group of affiliated corporations could net interest under § 6621(d). The affiliated corporations formed a consolidated group where a common parent filed a single unified income tax return under one TIN and received any refunds on behalf of the group. The court found the TIN to be determinative of same-taxpayer status. *Id.* ("[T]here seems no better plain meaning of the term 'same taxpayer' than 'same taxpayer identification number.'"). Thus, in that case, the consolidated group or corporations met the "same taxpayer" requirement because they shared a single TIN.

In both situations, the government would have us look to the identity of the payer at the time of the payments, as it argues *Energy East* requires. In the government's view, *Energy East* "held that I.R.C. § 6621(d) imposes a temporal requirement, under which a court must look to the time the overpayment and underpayment were made to evaluate whether they were made by the same taxpayer." Appellant Br. 27. So under the government's understanding of *Energy East*, the relevant inquiry focuses on the timing of the payments.

Applied to Situation One, the government's approach would find that different taxpayers made the underpayment and overpayment, because the two payments were made by then-unaffiliated corporations.

As noted above, the government concedes that Wells Fargo may net interest in Situation Two, where the surviving corporation in a merger (First Union) made an overpayment before a series of mergers and an underpayment afterward. Before, during, and after the mergers in Situation Two, the underpaying and overpaying company retained the same TIN because it was the surviving corporation in the mergers. The government contends that this fact is dispositive: because the TIN remains the same, the taxpayers are the "same taxpayer" under the statute. At the same time, the government

acknowledges that the pre- and post-merger corporations in this situation are not identical because the taxpayer (First Union) absorbed four separate corporate entities in the time between its overpayment (pre-mergers) and underpayment (post-mergers).

Turning to Situation Three, where the acquired non-surviving corporation (CoreStates) had an overpayment before merger and the surviving corporation (First Union) had an underpayment after merger, the government asserts that Wells Fargo cannot net interest because the surviving corporation has a different TIN and thus is not the same "taxpayer" as the acquired corporation that made the overpayment. Notably, Situation Three differs from Situation Two only in the choice of who is the named surviving corporation.

The government further contends that netting should not be allowed in Situation Three even under its more lenient "same in relevant essentials" test. The government acknowledges that "same taxpayer" cannot mean the corporations are identical in all respects, as the statute is designed to aid large corporate taxpayers and "[t]he reality is that the make-up of large corporations . . . undergo[es] regular changes." Appellant Br. 49 (quoting *Magma Power*, 101 Fed. Cl. at 571) (alterations in original). Indeed, the government points out that its concession of netting in Situation Two allows for a corporation to undergo a large amount of change—i.e. four mergers—yet remain the "same taxpayer." *Id.* Thus, the relevant question under this broader test would be whether in Situation Three the taxpayers had the same relevant essentials. The government argues that the overpaying and underpaying corporate entities in Situation Three did not have the same relevant essentials: the two entities were incorporated under different names, held principle offices in different states, filed different tax returns, and operated with significant geographic differences. Appel-

lant Br. 51–53. Thus, the government argues that the entities in Situation Three failed to meet § 6621(d)'s "same taxpayer" requirement.

At the outset, we agree with the government's approach in two respects. First, we agree that each situation requires individual treatment, so we decline Wells Fargo's invitation to decide this case in one fell swoop. Second, we agree with the government that *Energy East* applies to this case. The Court of Federal Claims erred in holding otherwise. This court decided *Energy East* as a matter of statutory interpretation. We explained that in § 6621(d), the term "by the same taxpayer" immediately follows and therefore refers to "equivalent underpayments and overpayments." *Energy E.*, 645 F.3d at 1361. We applied the last antecedent rule, which requires that "a limiting clause or phrase 'should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Id.* (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). We thus held that "the statute provides an identified point in time at which the taxpayer must be the same, *i.e.*, when the overpayments and underpayments are made." *Id.* (emphasis omitted).

*Energy East* did not rely on the nature of the corporations at issue. Indeed, the parties did not dispute the meaning of "same taxpayer" in that case because they disagreed only on "the point in time at which the party requesting the refund must be the 'same taxpayer' to avail itself of interest netting under § 6621(d)." *Id.* As such, we conclude that the statutory framework announced in *Energy East* applies regardless of the corporate structures at issue. We examine Situations One and Three below under *Energy East*'s framework.

I.

We hold that Wells Fargo may not net interest in Situation One. *Energy East* requires us to ask this question: is the entity that made the underpayment at the time of

the underpayment the "same taxpayer" as the entity who made the overpayment at the time of the overpayment? *Id.* Applying this framework here, the taxpayer that made the underpayment in Situation One was not the "same taxpayer" as the one that made the overpayment.

In Situation One, First Union made the underpayment and Old Wachovia made the overpayment. The two companies later merged. Thus, at the respective times of the overpayment and underpayment, there were two distinct taxpayers: First Union and Old Wachovia. Indeed, the situation is markedly similar to the one this court examined in *Energy East*. There, two separate corporate entities made separate over- and underpayments, after which a common parent corporation consolidated the two entities as subsidiary siblings. *Id.* at 1359. We held that those payments could not be netted under § 6621(d) because both the underpayment and overpayment "occurred prior to [the parent's] acquisition" of the underpaying and overpaying entities. *Id.* at 1363. Similarly here, the payments were both made before the merger, and thus the payments were made by two separate corporations. They do not meet the "same taxpayer" requirement under § 6621(d).

That the two entities later merged does not change the fact that they were separate at the time of the original payments. Wells Fargo asserts that merger law operates to retroactively make the two separate corporations the same under the statute. But Wells Fargo points to no controlling authority in the statute or case law to support its position. *Energy East* makes clear that it is the identity of the corporation *at the time of the payments* that matters. *See id.* Nothing in *Energy East* suggests that later changes in corporate structure can retroactively change a taxpayer's status as to earlier payments. We thus decline Wells Fargo's invitation to extend the statute

to retroactively view merged entities as the "same tax-payer."

## II.

Turning to Situation Three, we again ask whether the entity at the time of the overpayment, CoreStates, is the "same taxpayer" as the entity at the time of the under-payment, the post-merger surviving corporation, First Union. *See id.* at 1361. The answer to that question depends on whether post-merger First Union, an entity that has merged with CoreStates, is the "same taxpayer" as the pre-merger CoreStates. To answer this question, we must further clarify the meaning of "same taxpayer" under § 6621(d). Specifically, we must determine whether a post-merger entity is the "same taxpayer" as a pre-merger acquired entity. For the reasons below, we find that the corporations in Situation Three meet the "same taxpayer" requirement.

## A.

We begin with the text of the statute. *See Duncan v. Walker*, 533 U.S. 167, 172 (2001). I.R.C. § 6621(d) pro-vides the conditions that permit interest netting:

> To the extent that, for any period, interest is pay-able under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the *same taxpayer* of tax im-posed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

I.R.C. § 6621(d) (emphasis added). The definition of "same taxpayer" is not plain from the face of the statute. Neither § 6621(d) nor the rest of the Internal Revenue Code defines the term "same taxpayer."

Further, the term "same taxpayer" is not self-defining. Both parties agree that the term "same taxpayer" does not

require the taxpayer corporation to be completely identical. Indeed, in conceding Situation Two, which is very similar to Situation Three, the government necessarily concedes that the statute's "same taxpayer" requirement does not require that the corporations making the payments be identical. The government explains that "to require absolute identity would make interest netting generally inapplicable to 'the companies that are most likely to take advantage of interest netting,' because '[t]he reality is that the make-up of large corporations . . . undergo[es] regular changes." Appellant Br. 49 (quoting *Magma Power*, 101 Fed. Cl. at 571) (alterations in original). Thus, both parties agree that the context of § 6621(d) mandates that "same taxpayer" cannot require corporations to remain largely unchanged. But the parties dispute the extent of corporate change that "same taxpayer" allows.

### B.

Because the text of the statute does not define "same taxpayer," we look next to the legislative history. Like the statute, it does not define "same taxpayer," but it does offer important context for understanding the statute. It reveals that the statute is remedial in nature, and thus should be read broadly. *See Tcherepnin*, 389 U.S. at 336 ("In addition, we are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes."). Both the statute's legislative history and its historical context suggest that Congress enacted § 6621(d) to remedy what it saw as inequity in the tax code.

In the legislative history accompanying the enactment of § 6621(d), Congress identified an inequity in the tax code that it sought to fix. Congress explained that it had not intended for a corporation to owe interest on an underpayment when the corporation had an equivalent

overpayment that it could be credited against.  H.R. Rep. No. 105-364, at 63–64 ("The Committee believes that taxpayers should be charged interest only on the amount they actually owe, taking into account overpayments and underpayments from all open years.  The Committee does not believe that the different interest rates provided for overpayments and underpayments were ever intended to result in the charging of the differential on periods of mutual indebtedness.").  Congress introduced § 6621(d) to fix this unintended consequence by permitting taxpayers to "net" interest on equivalent overpayments and underpayments.  *Id.* at 64 ("The bill establishes a net interest rate of zero on equivalent amounts of overpayment and underpayment that exist for any period.").  The bill thus remedied an unintended consequence caused by unequal interest rates by ensuring that a taxpayer with equal underpayments and overpayments would owe no interest on those payments.

The history of interest netting provides further support for the contention that § 6621(d) was remedial legislation.  Ever since Congress set interest at different rates on tax overpayments and underpayments, *see* Tax Reform Act § 1511(a), Congress has repeatedly attempted to enact broad interest-netting provisions.  *See* Office of Tax Policy, Dep't of the Treasury, *Report to the Congress on Netting of Interest on Tax Overpayments and Underpayments* 21–24 (1997), *available at* https://www.treasury.gov/ resource-center/tax-policy/Documents/Report-Netting-Interest-1997.pdf (hereinafter "Treasury Report").  For instance, Congress enacted predecessors to § 6621(d)— § 6402(a) and § 6601—to permit the IRS to net overpayment and underpayment interest.  *Id.*  Section 6402 allows for the satisfaction of "an underpayment . . . by the application of an overpayment by the same taxpayer, . . . then section 6601(f) permits the IRS to avoid computing interest on the underpayment for the amount and period

of mutual indebtedness." *Id.* at 9–10; I.R.C. §§ 6402(a), 6601(f). And Congress repeatedly instructed the IRS to implement "the most comprehensive netting procedures under section 6402 that are consistent with sound administrative practice." Treasury Report at 22 (collecting legislative history).

Despite these efforts of Congress, the IRS interpreted its power to net interest narrowly. In order to find out why the IRS had failed to implement broad interest netting procedures, Congress directed the Treasury Secretary to conduct a study, to hold hearings and receive public comments, and to publish a report identifying any limitations to its interest netting procedures. *See* H.R. Rep. No. 104-506, at 49 (1996); *see also Magma Power*, 101 Fed. Cl. at 563 (discussing the history of the enactment of § 6621(d)). In its request, Congress expressed that it was concerned by the Secretary's inaction:

> Congress has never adopted differential interest rates, or increased the amount of such differential, without at the same time also encouraging the IRS to implement comprehensive interest netting procedures. The Committee is concerned that the IRS has failed to implement comprehensive interest netting procedures and is interested in learning whether the delay stems from technical difficulties or substantive questions about the scope of such interest netting procedures.

H.R. Rep. No. 104-506, at 50 (1996).

The Treasury study reported to Congress that "the IRS currently does not perform global interest netting because of its position that it lacks the legal authority to do so." Treasury Report at 40. The Treasury explained that the IRS interpreted the law as granting it limited netting powers, restricted to "offsetting." Offsetting is the power to credit an overpayment against outstanding

liabilities. The IRS's interpretation derived from the text of section 6402(a).[3] It permits offsetting overpayment interest against any *liability*, which the Secretary interpreted as permitting the crediting of overpayment and accrued interest against only "outstanding" liabilities. Treas. Reg. § 301.6402–1. Acting under this interpretation, the Secretary did not apply § 6402(a) and § 6601(f) to net interest globally, as Congress had instructed. Treasury Report at 40–41.

We presume that Congress is familiar with existing Federal law when it enacts a new statute. *See, e.g.*, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). In this case, the presumption rings strong. The predecessor sections, §§ 6601 and 6402(a), were the very statutes that Congress had asked the Treasury to study. And these two sections had been interpreted by the IRS as providing insufficient legal authority to enact global netting procedures. So when Congress enacted § 6621(d), it understood that statute as expanding the IRS's authority to net interest against a statutory background consisting of §§ 6601 and 6402(a). Indeed, Congress even narrowed those existing provisions so that they did not interfere with the scope of the new § 6621(d). *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206,

---

[3] 26 U.S.C § 6402(a) reads:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f) refund any balance to such person.

§ 3301(b), 112 Stat. 685, 741 (amending § 6601(f) to provide that the section "shall not apply to the extent that section 6621(d) applies.").

Moreover, Congress expressed specific concerns arising out of the Secretary's current interpretation of § 6402. In the committee report discussed above, Congress noted that current law encouraged taxpayers to delay their payment of underpayments to ensure that they could be available to offset later overpayments. H.R. Rep. No. 105-364, at 64 ("The Committee is also concerned that current practices provide an incentive to taxpayers to delay the payment of underpayments they do not contest, so that the underpayments will be available to offset any overpayments that are later determined."). Congress enacted § 6621 to correct this improper incentive. It explained that "[t]he Committee believes that this is contrary to sound tax administrative practice and that taxpayers should not be disadvantaged solely because they promptly pay their tax bills." H.R. Rep. No. 105-364, at 63–64.

So when Congress enacted § 6621(d), it did so knowing that it was expanding on the IRS's pre-existing authority to implement interest netting. Section 6621(d) remedied inequities caused by different overpayment and underpayment interest rates. And it expanded the IRS's authority under prior statutory sections permitting interest netting, namely §§ 6601 and 6402(a). Indeed, a nonbinding Field Service Advice Memorandum published shortly after § 6621(d)'s passage echoed this sentiment. *See* F.S.A. Mem. 200017003, 2000 WL 1873995 (Oct. 19, 1999). It explained that, "[i]n eliminating the interest rate differentials without regard to whether overpayments and underpayments are currently outstanding, Code section 6621(d) should be available in those situations where the Service would be entitled to offset." *Id.* Thus, both Congress and the IRS expressed a contempo-

raneous understanding that § 6621(d) expanded on preexisting interest-netting authority.

The history of § 6621(d) therefore reveals that Congress intended the section to be remedial, so we construe the statute "broadly to effectuate its purposes." *See Tcherepnin*, 389 U.S. at 336.

C.

While Congress did not explicitly define the term "same taxpayer" in the statute or legislative history, it did not choose the term in a legal vacuum. Rather, Congress chose this term against a background of merger law that sheds some light on the meaning of "same taxpayer" in the statute. While these sources do not control the outcome of our inquiry, they nevertheless provide important context to understand the meaning of § 6621. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.").

Wells Fargo asserts that courts have recognized as a central principle of merger law that two companies effectively become one after a merger. To an extent, we agree. Although courts employ different terms to describe Wells Fargo's alleged principle, courts often reference a principle that mergers automatically effect the joining or absorption of the acquired entity into the survivor. *See, e.g.*, *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 550 n.3 (1964).

The Supreme Court, for example, has described mergers as adhering to "the principle that the corporate personality of the transferor is drowned in that of the transferee." *Helvering v. Metro. Edison Co.*, 306 U.S. 522, 529 (1939). Circuit courts have described an acquired corporation as "absorbed" rather than "drowned": "A merger of two corporations contemplates that one corpo-

ration will be absorbed by the other and will cease to exist while the absorbing corporation remains." *Bowers v. Andrew Weir Shipping, Ltd.*, 27 F.3d 800, 806 (2d Cir. 1994) (quoting *Engel v. Teleprompter Corp.,* 703 F.2d 127, 131 (5th Cir. 1983)). And commentators imagine the process as the survivor "stepping into the shoes" of the acquired entity. Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 12.22 (online ed. 2015) ("In a merger, one corporation absorbs the corporate enterprise of another corporation, with the result that the acquiring company steps into the shoes of the disappearing corporation as to its assets and liabilities."). Regardless of the words used to describe the process, a merger of two corporate entities mixes and combines the personalities of the predecessor corporations into the survivor.

These merger principles have also guided the Supreme Court on related questions of law. In *Metropolitan Edison*, for example, the Court used these principles to resolve the dilemma of whether a corporation could deduct certain expenses relating to bonds issued by its subsidiaries. 306 U.S. at 523. Between the time the bonds were issued and redeemed, the subsidiaries had merged into the parent corporation. *Id.* at 523–24. The Court decided the case on "the principle that the corporate personality of the transferor is drowned in that of the transferee. It results that the continuing corporation may deduct unamortized bond discount and expense in respect of the obligations of the transferring affiliate." *Id.* at 529. As the Court explained, in cases of a "true merger or consolidation whereby the identity of the corporation issuing the bonds continues in the successor and the latter becomes liable for the debts of the former by operation of law, the successor may deduct amortization of discount and expense in respect of bonds issued by its predecessor as well as unamortized discount and expense

on any of such bonds retired prior to maturity." *Id.* at 526. In other words, if the bonds had changed hands in that case, the corporation would not have been able to access the deduction, but because the Court understood the merger to be a continuation of the identity of the acquired corporation in the successor corporation, the successor corporation could deduct the assets.

These sources suggest that the post-merger surviving corporation in Situation Three is the "same taxpayer" as the pre-merger acquired corporation under § 6621(d). Merger law effects the automatic acquisition by the surviving corporation of the assets and liabilities of the acquired corporation. Indeed, the personality of the acquired corporation is "drowned" in the survivor. *Id.* at 529.

Citing *Newmarket Manufacturing Co. v. United States*, 233 F.2d 493, 499 (1st Cir. 1956) and *E. & J. Gallo Winery v. C.I.R.*, 227 F.2d 699, 705 (9th Cir. 1955), the government argues that *Metropolitan Edison's* language is merely a "'metaphorical expression[],' reflecting the concept that attributes of the corporation that ceases to exist are transferred to another corporation." Appellant Reply Br. 20. But the cases cited by the government do not support its position.

In *Newmarket*, the First Circuit called *Metropolitan Edison's* language a "metaphorical expression," but nevertheless relied on this very "metaphorical expression" as central to the court's holding. *See Newmarket Mfg.*, 233 F.2d at 499. Indeed, the First Circuit explained that an acquired corporation's "drowning" made it the "same taxpayer" as the surviving corporation:

> What the Court was saying, of course, was that the transferee in a statutory merger should be deemed to be continuing in itself the corporate life of the now-defunct component, and that it fol-

lowed from this conceptual identity *that the two corporate entities were to be treated for a substantive purpose in the income tax as the same taxpayer.*

*Id.* (emphasis added). The First Circuit applied this logic to find that a merged corporation was entitled to carry back a net operating loss as a deduction against income earned by an acquired corporation. *Id.*

The second case cited by the government, *E. & J. Gallo Winery*, 227 F.2d at 705, simply noted that *Metropolitan Edison's* language is "possibly . . . a fiction," but nevertheless relied on that same language to support its holding:

> Possibly the concept that the former corporation continues its identity and is an integral part of the successor is a fiction. (The so-called major premise in *Helvering v. Metropolitan Edison Co.*, supra.) Possibly, the concept that the earlier corporation is 'drowned' in the successor is a fiction. But the successor corporation was allowed the deduction of the 'drowned' corporation. If the fiction can support a bond expense deduction, it can bear the weight of an unused excess profits tax credit.

*Id.* (citing *Metro. Edison*, 306 U.S. at 529). While the court acknowledged that these principles may be a "fiction," the court believed this "fiction" "bear[s] . . . weight." *Id.* In fact, with particular relevance to the question before us, the Ninth Circuit explained that the "major premise" of *Metropolitan Edison* was "the concept that the former corporation continues its identity and is an integral part of the successor." *Id.* So, despite the government's contention otherwise, these two cases actually suggest that *Metropolitan Edison* stands for a rule that

the acquired entity in a merger continues its identity and is an integral part of the successor.

Federal tax law and the IRS's treatment of the predecessor statutes to § 6621(d) also both suggest that Wells Fargo meets the statute's "same taxpayer" requirement in Situation Three. First, federal tax law recognizes statutory mergers under I.R.C. § 368(a)(1)(A) as a form of corporate reorganization where the pre-merger entities' assets and liabilities automatically become the assets and liabilities of the post-merger surviving corporation. Indeed, Treasury regulations recognize that a central, distinguishing feature of mergers from other forms of acquisition is that mergers affect a continuation of identity from the pre-merger corporations to the post-merger surviving corporation and pre-merger companies' assets and liabilities are *automatically* assumed by the post-merger entity.[4] Treas. Reg. § 1.368-2(b)(1)(ii); *see also John Wiley*,

---

[4]    Treas. Reg. § 1.368-2(b)(1)(ii) reads:

For purposes of section 368(a)(1)(A), a statutory merger or consolidation is a transaction effected pursuant to the statute or statutes necessary to effect the merger or consolidation, in which transaction, as a result of the operation of such statute or statutes, the following events occur simultaneously at the effective time of the transaction—

(A) All of the assets (other than those distributed in the transaction) and liabilities (except to the extent such liabilities are satisfied or discharged in the transaction or are nonrecourse liabilities to which assets distributed in the transaction are subject) of each member of one or more combining units (each a transferor unit) become the assets

376 U.S. at 550 n.3 (noting "the general rule that in the case of a merger the corporation which survives is liable for the debts and contracts of the one which disappears").

Regarding overpayments and underpayments, the IRS treats merged entities consistently with these background principles. After a merger, the surviving corporation is automatically liable for the underpayments and entitled to the overpayments of its predecessors. The government acknowledges as much: "The IRS allows the surviving corporation in a merger, as the 'successor corporation' to make a claim for refund or credit 'in the name of, and on behalf of, the [predecessor] corporation, which paid such taxes.'" Appellant Br. 36 n.13 (quoting Rev. Rul. 54–17, 1954–1 C.B. 160) (alteration in original).

---

and liabilities of one or more members of one other combining unit (the transferee unit); and

(B) The combining entity of each transferor unit ceases its separate legal existence for all purposes; provided, however, that this requirement will be satisfied even if, under applicable law, after the effective time of the transaction, the combining entity of the transferor unit (or its officers, directors, or agents) may act or be acted against, or a member of the transferee unit (or its officers, directors, or agents) may act or be acted against in the name of the combining entity of the transferor unit, provided that such actions relate to assets or obligations of the combining entity of the transferor unit that arose, or relate to activities engaged in by such entity, prior to the effective time of the transaction, and such actions are not inconsistent with the requirements of paragraph (b)(1)(ii)(A) of this section.

Similarly, the IRS recognizes that the successor corporation can agree to extend statutes of limitations "on behalf of an absorbed constituent." Rev. Rul. 59–399, 1959–2 C.B. 488; Appellant Br. 36 n.13. Thus, the IRS itself has treated parties to a statutory merger as the same taxpayer in other contexts following a merger.

The IRS's treatment of interest netting under § 6402 further supports our conclusion that interest netting under § 6621 should extend to merged corporations. As discussed above, because § 6402 predates § 6621, it is part of the legislative history with which Congress is presumed to be familiar. *Miles*, 498 U.S. at 32 ("We assume that Congress is aware of existing law when it passes legislation."). This presumption has particular force here, where Congress enacted § 6621(d) after repeatedly informing the Secretary of its desire for broad interest netting under § 6402(a) and the Secretary nonetheless remained reticent to apply its powers broadly.

At the Court of Federal Claims, the government conceded that Wells Fargo could offset overpayments and underpayments under § 6402(a). *See* J.A. 677 (offsetting overpayment of $2,060,843.32 from Fidelity's 1993 income tax account against underpayment from First Union's 2003 income tax account). The IRS therefore allowed offsetting of overpayments and underpayments between Wells Fargo and its predecessors that directly parallel the overpayments and underpayments on appeal before us.

The government justifies this difference in treatment under the two sections by arguing that § 6402(a)'s language is broader than § 6621(d). The government asserts that Congress's use of "same" before taxpayer makes all the difference: whereas § 6402(a) merely requires "such person" must have made the overpayment, § 6621(d) requires the "same taxpayer." While the government's argument might have force without context, the history of

§ 6621(d)'s enactment belies the government's position. Before enacting § 6621(d), Congress repeatedly directed the Secretary to implement "comprehensive crediting procedures under section 6402." H.R. Rep. No. 104–506, at 50. When the Secretary failed to act because it believed its legal authority was too narrow under § 6402(a), Congress broadened the Secretary's power to net interest by enacting § 6621(d). Thus, the government's assertion that § 6402(a) permits offsetting by merged entities, but not interest netting under § 6621(d), goes directly against this statutory history. Moreover, there is no clear indication in the text of the statute that Congress intended to exclude merged entities by using the term "same taxpayer" rather than "such person." Put simply, Congress's invocation of the word "same" does not suggest it intended to carve merged corporations out of the scope of interest netting under § 6621(d).

Finally, the government argues that I.R.C. § 381 mandates a finding that a surviving corporation cannot net interest from a payment made by an acquired corporation. Section 381 enumerates the tax attributes that transfer from an acquired corporation to a surviving corporation in a merger. The list of transferred tax attributes does not include interest netting. The government thus argues that § 381 "makes clear that a merger does not make all the participants in a merger the same taxpayer," because it excludes interest netting from the list of tax attributes that transfer automatically. Appellant Br. 22. Wells Fargo responds that § 381 reflects Congress's express authorization for some tax attributes to transfer automatically, but it does not mandate against interest netting here because it does not foreclose additional tax attributes from transferring in a merger. Wells Fargo draws support from the section's legislative history and relevant Treasury regulations, which explain that "no inference is to be drawn" from § 381 as to whether any tax attribute may transfer from an acquired corporation to a

successor. *See* S. Rep. No. 83-1622, at 4915 (1954) ("No inference is to be drawn from the enactment of this section whether any item or tax attribute may be utilized by a successor or a predecessor corporation under existing law."); Treas. Reg. § 1.381(a)-1(b)(3) (directing that "no inference is to be drawn from the provisions of section 381 as to whether any item or tax attribute shall be taken into account by the successor corporation"). The Court of Federal Claims agreed with Wells Fargo, explaining that "the fact that interest netting is not included on the § 381 list is not determinative because the legislative history on that provision makes clear that the list was not intended to be exhaustive." *Wells Fargo*, 117 Fed. Cl. at 40 n.11. The Court of Federal Claims thus concluded that § 381 does not mandate a particular interpretation of § 6621(d) or foreclose merged corporations from netting interest here. We agree with the Court of Federal Claims' conclusion on this point.

## D.

For the reasons above, we find that Wells Fargo may net interest in Situation Three. As noted above, § 6621(d) is a remedial statute, which we read broadly. Moreover, Congress promulgated § 6621 against the legal background detailed above, including principles of merger law and the IRS's treatment of mergers in the statutory precursor to § 6621(d). Also, general IRS treatment of mergers suggests that § 6621(d)'s "same taxpayer" requirement, read broadly, permits netting in Situation Three. Thus we hold that an acquired corporation that makes an overpayment before a merger is the "same taxpayer" for the purposes of § 6621(d) as the post-merger surviving entity that has absorbed the acquired corporation.

CONCLUSION

For the foregoing reasons, we hold that Wells Fargo may net interest under § 6621(d) in Situation Three, but that it may not net interest in Situation One. We affirm-in-part, reverse-in-part, and remand for proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COSTS

No costs.